## SCHARER et al., Appellants, v. PANTLER et al., Respondents.

### St. Louis Court of Appeals, November 18, 1907.

1. COVENANTS: Building Restrictions: Strict Construction.
Building restrictions in conveyances of the fee are regarded un-
favorably and are strictly construed; nevertheless such restric-
tions upon the use of property in favor of others interested
will be enforced upon equitable grounds.

2. ———: ———: ———: Discretion of Chancellor: Abandonment.
The specific enforcement of building restrictions in equity is
largely in the discretion of the chancellor and such relief will
not be granted where other familiar principles of equity would
be thereby violated. Where the observance of a restriction,
inserted in deeds to parcels of a tract of ground in pursuance
of a general plan of improvement, is afterwards abandoned by
those in whose favor the covenant is inserted, it will not be
specifically enforced against others.

3. ———: ———: Abandonment: Specific Enforcement. Where
the owner of a number of lots facing on a street conveyed the
several lots to different grantees, each conveyance containing
a covenant that no building should be erected nearer than

twenty-five feet from the street, and immediately afterwards the grantor and all of such grantees erected buildings within fifteen feet of the street, this was a complete abandonment of all rights under the covenant, so that the owners of such property could not restrain one of their number from erecting a building within five feet of the street.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Henry H. Oberschelp* for appellant.

The fact that the line on which the fronts of all the houses in the tract, including defendants,' are situated may be less than twenty-five feet from the street line, furnishes no excuse to defendants to extend their building in front of the others. Morrow v. Hasselman (N. J.), 61 Atl. 369; Moore v. Murphy, 34 N. Y. S. 1130; Los Angeles University v. Swarth, 107 Fed. 798; Payson v. Burnham, 141 Mass. 547; McGuire v. Caskey, 62 Oh. St. 419; Sanders v. Dixon, 114 Mo. App. 229; Improvement Co. v. Tower, 158 Mo. 282; Latimer v. Livermore, 72 N. Y. 174.

*John S. Leahy* for respondents.

NORTONI, J.—The suit is in equity and invokes the process of injunction. Plaintiffs seek to enjoin the defendant from erecting an addition to his residence in violation of an alleged building restriction contained in the deed. The circuit court, after hearing the evidence, dismissed the bill and plaintiffs appeal.

The material facts with respect to the controversy are: about 1886, one Virginia S. Peugnet owned a tract of land in city block 1383, city of St. Louis, extending along and fronting upon the east side of Jefferson avenue from Shenandoah avenue on the south, northward six hundred and one feet and six inches; and desiring

to dispose of the same, formulated and adopted a plan to divide and plat the same into city residence lots with a restriction to the effect that no building should be erected on any one of said lots nearer than twenty-five feet to the front line of said street, Jefferson avenue. About the same time, Mrs. Peugnet herself, for the purpose of starting a residence section thereon, erected three two-story brick residences on three of the said lots mentioned. Each of these residences so erected by her, however, instead of being placed twenty-five feet from the front line of said street, were in fact erected fifteen feet from the front street line. Each of said residences being the same distance, fifteen feet, from the front line, they of course presented the appearance of a building line at that distance from the street, although the covenants in the deed required that no building should be erected nearer than twenty-five feet from the street line. About the same time that Mrs. Peugnet erected these buildings, she sold and conveyed to one Cora Van Dam one of said lots containing the covenant on the part of said Cora Van Dam that neither she nor her heirs or assigns would erect or permit the erection of any building on said lot "nearer than twenty-five feet to the front line of said street." Said Cora Van Dam, however, did forthwith, just as her grantor, Mrs. Peugnet had done, erect a residence upon said lot, the front line of which was and is fifteen feet from the front line of said street, and on the same line or apparent line of the three houses erected by her grantor. Mrs. Peugnet continued to and did sell and convey, with like covenants, all of the lots in said block to various purchasers, except one, which it seems from the evidence, remains unsold, or unoccupied at least. Each and all of the purchasers of said lots, although their deeds contained a covenant requiring no building to be erected nearer than twenty-five feet to the front street line, have erected buildings upon their lots just

as their grantor, Mrs. Peugnet, and as Mrs. Cora Van Dam had done; that is to say, each erected his or her building with its front fifteen feet from said street line, and therefore on a line with the three buildings erected by Mrs. Peugnet and the one erected by Mrs. Van Dam. All of these places are residences, save one, located at the corner, which is a business house, occupied as a drugstore. This building, however, like all of the others in the block, is erected, notwithstanding the restrictive covenant, with its front line fifteen feet from the street. There are sixteen or eighteen separate buildings in all, including the drugstore, on as many lots, which consist of the entire properties with which the court is concerned, and all of these buildings have been erected and occupied for many years; some of them in 1886, 1887, 1888, and others a few years later.

The defendant in this case purchased, in 1902, and now owns and occupies as a residence, the Cora Van Dam property above mentioned. In the summer of 1906, defendant commenced the erection of an addition to his said residence, extending the same about ten feet forward toward the street, with the purpose of occupying the same as a butcher shop and grocery store. The several property-owners in the block facing on Jefferson avenue, after having called his attention to the covenant in the deed, forbidding any building nearer than twenty-five feet to the street line, requested and demanded that he desist from erecting such addition, and upon the defendant declining to do so, they have joined as plaintiffs in this proceeding by injunction. The injunction is sought on the grounds that the ten-foot addition being erected by the defendant in front of his said residence, is a violation of the covenants in his and plaintiffs' deeds. There is no question in this case as to whether or not the covenants in the deed inure to the benefit of the several lot owners in the block, nor will we concern

ourselves with more than one proposition which seems to be conclusive on the case stated.

1. The law favors the free and untrammelled use of real property. Restrictions in conveyances of the fee are regarded unfavorably and are therefore strictly construed. [Hutchinson v. Ulrich, 145 Ill. 336; Eckhart v. Irons, 128 Ill. 568-581; 6 Amer. & Eng. Ency. Law (2 Ed.), 513.] Nevertheless, proper building restrictions and other limitations on the use of property of a character which the law permits to be attached to land, in such a sense as to restrict the use of one parcel thereof in favor of another, will be enforced in a proper case in courts of equity upon equitable grounds in favor of or against the party designed to be benefited or burdened thereby. [5 Amer. & Eng. Ency. Law (2 Ed.), 9; Coughlin v. Barker, 46 Mo. App. 54; Sanders v. Dixon, 114 Mo. App. 229, 89 S. W. 577; Compton Hill Imp. Co. v. Tower, 158 Mo. 282, 59 S. W. 239; Hall v. Wesster, 7 Mo. App. 56.]

There are numerous instances, however, where the courts refuse on equitable grounds to enforce such restrictions, for in all cases where specific performance is sought in equity, the matter rests largely in the discretion of the chancellor and in no case should the relief prayed for be given, when, under the circumstances, the giving of such relief would violate other familiar principles of equity jurisprudence. [Columbia College v. Thacher, 87 N. Y. 311-317; 2 Story, Eq. Juris., sec. 750; 5 Amer. & Eng. Ency. Law (2 Ed.), 15.] Among the equitable grounds upon which the courts have declined to interfere by injunction in this class of cases, are abandonment and acquiescence, brought about or participated in by those who are seeking to enforce the covenant. It seems the facts of this case place it within the influence of each and both of the principles last above referred to. Now it is a well-established rule in equity jurisprudence that a court will not lend its aid

to restrain the violation, or for the specific performance of a restriction, such as that involved in this case, when it appears that such restriction was inserted in the deed as parcel, and in pursuance of a general plan of improvement which has since been abandoned by those in whose favor the covenant was executed and who are seeking to enforce the same. Authorities on this question are numerous and in point. Perhaps the doctrine found its origin in the celebrated controversy often referred to as the Duke of Bedford's case. [See Duke of Bedford v. British Museum, 2 M. & K. 552.] While it seems that case turned more particularly upon the doctrine of change of circumstances and surroundings brought about by the Duke of Bedford himself, which operated to preclude his right of relief in equity, nevertheless the principle of abandonment is quite aptly referred to therein. In the later case of Roper v. Williams, 1 Turn. & Russ. 18, the application was for an injunction to restrain a breach of a covenant that buildings be erected upon a general plan, the covenantee having acquiesced in a partial deviation in the plan by not applying immediately to a court to restrain the same. In giving the opinion why a court of chancery should not interfere to restrain the further violation of the covenant, Lord ELDON said: "Every relaxation which the plaintiff has permitted in allowing houses to be built in violation of the covenant, amounts *pro tanto* to a dispensation of the obligation intended to be contracted by it." The principle thus announced has been frequently acted upon by the courts of both this country and England in cases of this nature. Some of the courts, and text-writers as well, refer to it as the doctrine of abandonment, when a general plan, originally intended, has been, as in this case, deviated from by common consent of all concerned. The principle asserted in such cases is that it would be inequitable to give to the plaintiff the benefit of the covenant which,

by his conduct, he has seen fit to treat as void and of no effect. It is obvious the doctrine is in the nature of an equitable estoppel arising from the conduct of the complaining parties which appears tantamount to an implied agreement at least among them to the effect that they would not abide the covenant. Other authorities in point are Sayers v. Collyer, 84 Ch. Div. 180; Duncan v. Railway, 85 Ky. 525-535; Coughlin v. Barker, 46 Mo. App. 54, 73, 74; Peek v. Matthews, 3 Eq. L. R. 514; 5 Amer. & Eng. Ency. Law (2 Ed.), 17; 2 High on Injunctions (4 Ed.), 1158.] And in some of the cases as well as the text-books, the doctrine is announced that the chancellor is justified in refusing relief in cases of this sort on the ground that the covenantees seeking relief have either participated in or acquiesced in like violations of the covenant until it would be inequitable to enforce the same at their suit after such conduct on their part which has resulted in treating the covenant as non-existent, or if existing, void and of no effect. In view of the fact that under such circumstances, other persons are likely to be led into violations by the conduct of the covenantees, equity requires diligence on the part of those who invoke its preventive aid, and a slight degree of acquiescence is sufficient to defeat the plaintiffs' bill. "Since every relaxation which plaintiff permits in allowing erections to be made in violation of the covenant, amounts *pro-tanto,* to a disaffirmance of the obligation." [2 High on Injunctions (4 Ed.), sec. 1159; Roper v. Williams, 1 Turn. & Russ. 18.]

The learned trial judge very properly refused the injunction. If we give effect to the equitable principles above mentioned, the judgment must be affirmed. If there could be such a thing as a complete case of abandonment with respect to a restriction which was originally intended to play a part in the improvement and upbuilding of a property, we have it here. According

to the proof, the grantor, Mrs. Peugnet, who inserted and required the covenant in the deed of the defendant's grantor, Mrs. Van Dam, and in the deeds conveying all other lots in the block which are now held by the several plaintiffs, simultaneously therewith, or nearly so at least, proceeded to violate the same by erecting three residences on as many separate lots within fifteen feet instead of twenty-five feet of Jefferson avenue, and defendant's grantor, Mrs. Van Dam, and each and all of these plaintiffs or other grantors proceeded likewise to and did actually abandon the covenant as to the twenty-five feet mentioned, by building within fifteen feet of the street line. Now under such circumstances, when the parties, by common consent, as if an agreement were had to that effect, have abandoned the restriction and proceeded with all of the buildings and improvements as though the covenant either did not exist at all, or if it existed, it was void, it would indeed be inequitable for the court to award an injunction restraining the defendant from violating the identical covenant which the plaintiffs, one and all, have either abandoned or wilfully violated for many years past. Of course, if it be a case of wilful violation on their part, they are precluded from relief under the familiar rule that he who seeks equity must do equity; or in other words, must come with clean hands and be free from iniquity in respect of the same subject-matter. A case in point is Compton Hill Imp. Co. v. Tower, 158 Mo. 282, 59 S. W. 239. There is no proof in this case, however, tending to show an unjust purpose or such conduct on the part of the plaintiffs as would justify a court of conscience in condemning it as inequitable within the meaning of the rule that he who comes into a court of equity must come with clean hands and a clear conscience; for here, while the plaintiffs have not abided the covenant, none of them seem to have acted with a wilful purpose to disregard the rights of others;

in other words, their hands are untarnished from the soil of iniquity, and the authority of Compton Hill Imp. Co. v. Tower does not control. The case is purely one of abandonment; nothing more and nothing less. The doctrine of abandonment so completely covers the case as to render it entirely unnecessary to further discuss the matter of acquiescence above referred to.

The judgment is for the right party and should be affirmed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.